Good morning, I'm Lawrence Rolfing. Okay, you're Mr. Rolfing. Glad to meet you, glad to have you here. Thank you. As you know, the commissioner is not going to appear in any one of these three cases. Yes. So we kind of leave this up to you now as to how you want to proceed. You can submit on the briefs if you want, or you can give us the argument, whatever you want to do. I will advise you of this. I'm reminded of a story when it comes to this. There was a preacher, and he got it all prepared to give a sermon once, and he went out to give his sermon at the chapel, and there was only one farmer who was sitting there in front of him. And he was a little worried because he's really been practicing on his address. So he went down to the farmer, and he said, Well, I'm a little worried about this. I've been practicing. What do you want me to do? And the farmer said, Well, if I go out and feed in the morning, and the horse comes, and there's only one horse, I still feed him. So the preacher got back up, and he really gave him the business. And he gave him the full lecture, and he prepared very well. And after he got through, he went down, and he said to the farmer, Well, what did you think? And the farmer said, Well, it was very good, Father. But he says, If the horse is the only one that comes in the morning, even though I feed him, I don't give him the whole load. So what you might do is think about that in what you're going to do in these cases, and we'll be glad to get them, because I really think that the issues are similar in each. Your Honor, my preference would be just to address all three cases at one time. Do you have any problem with that case? No, I think that's the appropriate way, and I was going to suggest that you can tell us. One of the cases is a little bit different from the other two, so just tell us about the differences as you go along. And Judge Friedman, do you care if we just do them all at once? No, no. All right. Give them to us. May it please the Court. As uncomfortable as it is for me to be here dickering about my own money or my associate's money, these are important cases. The Social Security Act contains provisions for the payment of attorney fees. The Supreme Court has construed the statute as requiring it to be measured on a contingency fee basis, and we have contingency fee retainer agreements in each of these cases. In each of the three cases, the matters were settled without need for the Court to decide the cases on the merits. They were stipulated to by the agency and by Mr. Shapiro, Mr. Cho, and Mrs. Haley. The cases were won on remand after significant additional services subject to 406A rather than 406B, and there were significant funds withheld in each of these cases. As I understand it, these three cases involve only fees for legal services performed in the judicial system, not at the administrative level. Is that correct? That is correct. That is correct. And the administrative fees have all been resolved. We're only here talking about the fees for services rendered before the United States District Court under Section 406B of Title 42. In each of these cases, the attorneys involved exercised billing discretion, utilizing the Kerr factors to decide to what they felt, even though the contract would have called for a greater fee to exercise billing discretion to reduce that amount, to gauge what they felt in their professional judgment was a reasonable fee under the circumstances. In two of the cases, the district court used a 1.4 multiplier to enhance what he considered to be a reasonable hourly rate, multiplied by 1.4. In the other case, the magistrate judge doubled the fee. He had a 100 percent multiplier. The problem with that code is that it is fundamentally a hybrid Lodestar. It's using a multiplier. And that is not a contingency fee. A contingency fee is measured by a percentage of the recovery. And Kerr instructs us that the amount recovered, the amount involved in controversy, is a legitimate basis for inquiry. And we have to temper that consideration with the Supreme Court's admonition not to create a windfall for the attorney. And, of course, attorneys are always ethically obligated not to charge. Well, I have a question, though, because I'm looking at the brief in the first case, Crawford or Shapiro. Your conclusion, you ask us to send the case back with instructions that the district court is to award the amount of the fee you initially requested. Now, that seems to me to suggest that you're arguing that as a matter of law, as a matter of law, a reasonable fee had to be the amount by which you had reduced the contingency fee. And since it's for the district court and not for this court to decide initially what is a reasonable fee, this seems to me to suggest that your basic position must be that whenever you have a contingency fee, any significant reduction below the 25 percent is automatically a reasonable fee. I may have overstated my position, Your Honor. But how do you say we should send it back? I mean, I can understand if you said that in these circumstances the case should be sent back for the district court, for the magistrate judge, to make a new analysis under the proper standards. But you don't ask for that. You say it should go back, and then the magistrate judge should award you as a reasonable fee the amount by which you proposed to reduce the contingency fee. And I'd like to find out, am I wrong that that's what you're contending? Not really, Your Honor. I think the district court magistrate, the magistrates, at least in the central district and in the eastern district in particular, where most of my practice is, the magistrates handle these cases. The magistrates are vested with discretion. We stipulate to and we consent to their jurisdiction for all purposes. And the magistrates in a number of decisions, published and unpublished, publicly and privately, have told me and told the attorneys in my firm that what they really want to do is trade a little bit of their discretion for a little bit of instruction from this court. If we could flush out the parameters of how we gauge reasonableness. And I think that whether counsel has exercised billing discretion is a factor to consider in whether this is a intentional use of the Article A reasonable fee. Part of the problem, I think, is that the district courts have been wrestling for years with the concept of that there is a singular, the reasonable fee, rather than a reasonable fee, which I think statutorily implies that reasonable encompasses a range of fees, that a fee of a certain amount could be reasonable or a fee at a higher level could be reasonable, and that the reasonableness of a fee, as long as it's within those brackets, is judicially, should be approved. Well, suppose in this case, in all three of these cases, the magistrate judge had conducted the kind of inquiry you say he should have made and came out with the same numbers. Would you be challenging that? If the district court used the nature and character of the services performed I'm assuming that the magistrate judge did everything in the way of analysis that you said should have been done, but was not done in these cases. But then on the basis of that analysis, he said, accordingly, I come out with the following numbers as a reasonable fee, and he came out with the same numbers he'd come out in these three cases. Would you then say, well, that was incorrect? He abused his discretion in saying that was a reasonable fee? Under those circumstances, Your Honor, I would think it would be harmless error and I wouldn't be here. Well, I guess to follow up, it seems to me that maybe what Justice Scalia said in his dissent in Giesbrecht is really what we've got going here. I mean, he said, by doing what we did in the opinion, we're leaving it wide open for discretion. We don't have anything which will tell us what to do, and we're fraught with all kinds of error, and therefore, this is a bad thing that you're doing in this case. That was, in fact, what he was suggesting. And yet, what it seems to me, which I have to follow the majority, the majority says it's discretionary, and the majority says that the fee ought to have something based on reasonableness, and then it ought to go through certain tests. Well, if I read these cases that you have in front of us, the buzzwords were said in lots of those cases. In two of those cases, most of the buzzwords. If I go to, well, Shapiro. In Shapiro, if I look at that, they said, just going through and trying to, they said, first of all, Shapiro did not unduly delay the case. They said, I believe the Rolfing firm to be due a very top 10% firm in expertise and experience and reputation, but they said, there's no data here on the risk in representing Social Security benefits. He said, there's no data on what outside counsel would give or do in these kind of circumstances. I'm going to look at what we would do on the straight old hourly basis, which we term load star gives it a kind of a big idea. I'm going to look at what's going to happen there, and then I'm going to say, well, that doesn't look exactly right, that they should have to go down to that, because we've come up with that they ought to have their experience, their expertise, their reputation, and after I was looking at all of these facts, I'm going to come up with this fee, and he sets it, and it's below what you wanted. I appreciate that you had a contingent fee, and you went in with something less than what they wanted, but giving buzzwords, which to me, those are the kind of things that came out of that Supreme Court opinion. He tried his best to use the buzzwords and then tried his best to find out what it would be if it was straight hourly and say, hey, this is a better firm than that, let's help them. Now, my worry about that is we're now on abuse of discretion. This is something the judge has a right to decide based on the factors in front of him, and I may not agree. I may say, hey, that Rolfing gives a good argument, I ought to give him a little more, but I can't do it on that basis, and my worry then is that because he says buzzwords, that we have a problem. Now, this isn't the first time this judge has tried to make a fee. I was on the district court, and we had a set of rules as to how we determined what the lawyer fee was going to be, and there was 12 of them, and we had to go down all 12 and list out what we thought, and some were not even applicable to what I was deciding. Are you really saying that this court should say that in every one of these fee cases, somebody's got to go down all 12 of those factors and list them all out before they can make it reasonable? Or, as the good judges suggested, since it's an abuse of discretion anyway, and since we're never going to get to the fact that because you said it was lower, it's absolute, the one we ought to give you, aren't we really set with an abuse of discretion standard that we do in many cases on facts? That's my problem. Let me ask this. The magistrate didn't give any reason for his particular multiplier, did he? No, he did not, Your Honor. He gave a 40% enhancement, and it appears to be picked out of the air, and that really is the cornerstone of this building that we're going to call abuse of discretion. Magistrate Judge Nakazato criticized the briefing as not setting forth Mr. Shapiro's particularized risk or my firm's particularized risk. He seemed to be saying that you had to come in with evidence about the risk that your firm incurred in all its cases, which to me was not quite the appropriate way to go. Well, Justice ---- Now, in the other case, Judge Block did not do that. No. Justice O'Connor in Delaware II cautioned, and this Court in Fadal agreed, that when we look at contingency fees, we look at the class of cases in general. And I don't compete with myself. I compete with other lawyers who Judge Nakazato said don't do as good a job as the lawyers in my firm. And if Mr. Shapiro did an outstanding job and, in this case, invested 19.5 hours of his time and 4.5 hours of paralegal time, and the average lawyer would have invested 33 hours of time, according to Patterson v. Zatvill, Judge Listerick's decision cited in the papers, if the average lawyer would have invested 33 hours in that case and gotten some other hypothetical hourly rate and gotten some other hypothetical enhancement, they would have been paid more for doing the same work than Mr. Shapiro did. And my clients ---- Well, not necessarily, because the average lawyer who took more time, the magistrate judge might have said, well, that particular lawyer is entitled to only a lower rate of compensation. We don't know. We don't know. Am I correct? As I understand, your basic contention is that the magistrate judge approached this case the wrong way. Instead of starting with a number of hours and what would be an appropriate hourly rate and then increasing it to reflect the excellent service that this particular lawyer had performed, he should have started at the other end. He should have started and said, well, it's 25 percent, but that seems high. I think it has to be reduced and then determine on whatever considerations were appropriate how much it should be reduced from 25 percent rather than starting at a base and increasing. That's your basic argument, isn't it? Right. We look at whether it's a windfall, whether the 25 percent is palpably too high. Unconscionability always implies reasonableness. We look at the nature and character of the services provided. Did this lawyer provide professional services in court that were helpful to the clients, eventually obtaining substantial past due benefits from the Social Security Administration? But you agree, don't you, that we have to determine whether the magistrate judge abused his discretion in setting this fee. And how did he abuse his discretion? I take it it's because he didn't make the inquiry that we've been just discussing. He started at the wrong place. And, therefore, if you start at the wrong place, you're probably going to come out at the wrong place. That's correct. Instead of starting at the bottom and going up, you should have started at the top and gone down. That's correct. But Giesbrecht doesn't require that. Well, it requires – I think the Eleventh Circuit decision in Kay v. Zapfel, which predated Giesbrecht v. Giesbrecht, was correct. There's not a presumption in favor of the contract, but a mild presumption. We start, as Judge Friedman said, we start with the contract, and then we allow ourselves to be very freely moved down the scale. Is it too high? Is the attorney responsible for delay? What are the awards in other types of cases? Not my firm, not how much time Mr. Shapiro or Mr. Cho or Ms. Haley invests, but lawyers in general, how much do they normally get for a fee? And there isn't any kind of reflection in that. But if I even take Kerr and I talk about the 12 factors I'm supposed to consider, I start out with the time and labor, and then I talk about the novelty and difficulty of the question. Then I talk about the skill requisite to perform the service, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is contingent or fixed, and then the time limitations. I mean, these factors that are in Kerr are in Idaho's rule that we deal with when we're talking about attorney's fees. And it doesn't seem to me that the magistrate went outside of this. He was talking about, okay, I've got to determine whether this is a good lawyer or a bad lawyer. He says, I think he's good. I think he's better than most. I've got to determine whether it is what I've got to do here, and I think he's doing a pretty good job. But then he goes through other factors that he thinks he ought to talk about, and he says, I don't have any data about this. I don't know how to control these factors, and therefore I've got to do something and I'm making my best effort based on what I have in front of me to make a multiplier. So I'm not sure I agree with my honorable colleague that he didn't give any basis for the multiplier. It seems to me he gave a basis for his decision and picked the multiplier based on that basis. Your Honor, 14% of cases denied by the appeals council find their way into federal court. 14% find their way into federal court. It's very difficult for these types of plaintiffs to find a lawyer. 98% of cases denied by an ALJ go to the appeals council, but only 14% find their way into federal court. And as I have expanded my practice over the last 20 years and hired lawyers and trained lawyers to perform the work in a professional and skillful manner, I have never starved for a dearth of cases. It isn't the lack of cases, it's the lack of quality lawyers. When these cases go to federal court, depending on which Social Security Advisory Board study you look at, between 5% and 6% of cases are reversed for the payment of benefits. 45%, 44%, 48% are sent back for additional proceedings. Of those cases that are sent back for additional proceedings, the administration grants 60% to 60% of those cases. So the average lawyer wins half of his cases or her cases in federal court and eventually prevails on 38% of their cases. If I'm only going to win 35% of the cases that I handle in federal court as an average lawyer, then I need to be paid a contingency fee that reflects my risk of loss in a generic sense. I cannot convince a new lawyer to come work for me if I'm going to tell them that you're going to get a 40% multiplier on one case, but you're going to lose 2 out of 3. It's not a reasonable fee. Absolutely. I mean, I've seen what the records suggest, but I'm saying that the magistrate, he takes what you're telling us, which I could have very easily come out a different way. But I can't undo the magistrate simply because I could come out a different way. Your Honor, the statistical analysis that I'm relying upon is in the clerk's record. And so the magistrate had a chance to look at all of that and survey it and apply this test to Giesbrecht, which Justice Scalia is pretty straight with what we have with Giesbrecht, Giesbrecht gives pretty wide discretion to the guy who's making the decision. And I don't believe that I can find anything that suggests that you can't go from the bottom up. You've got to come from the bottom down. And therefore, if I'm on an abuse of discretion, how do I say it was abuse? The Ninth Circuit in Giesbrecht, one, decided that the lodestar with a multiplier at the discretion of the district court applied. That's what the law of the Ninth Circuit was before the Supreme Court got hold of it. And that's what Judge Nakazato has done in this case. He's given us a multiplier with an enhancement. That was the law of the Ninth Circuit before, and that holding, that law of the circuit was reversed because it's wrong. It's not a lodestar with a multiplier. It's a contingency fee. Are you suggesting that one can't even look at the lodestar? Is there any absolute evidence of that in the appellate record? As a factor, I think it is appropriate for the court to look at and say, this fee that Mr. Shapiro has asked for, Mr. Cho has asked for, Ms. Haley has asked for, results in an hourly rate of $600 an hour or $700 an hour. That is appropriate. Well, what did Justice Ginsburg said, that it could be an aid? An aid, correct. It is a factor just like reduction from the 25 percent is a factor. The nature and character of the representation, the skill and reputation of counsel. These cases were not cases that Mr. Shapiro and Mr. Cho and Ms. Haley handled administratively. These cases came to them, and this is in their declaration. It's in the district court. These cases came to them because they were sent to us because somebody else lost and didn't want to take them to district court. What is the standard that you want us to announce in these cases? I think we need to. I think you said earlier that we're waiting to see what standard is to be applied. What is the standard you think we should announce? I think Judge Smith is correct. We need to take the dissent from Justice Scalia head on, that we need to give the court, the district court, the direction that the district courts are asking for, that we start with the contingency fee contract, and we adjust downward, if appropriate, for windfall, for low-quality services, for other factors, for delay by counsel. And then we look at the effective hourly rate and say, is this within the range of reasonable? And that's the kind of direction that the district courts are asking for. That's the kind of direction that is lacking in any published opinion by this court. In the case of Black v. Astrew, which is an unpublished opinion of this court last year, this court reversed an hourly rate, an effective hourly rate of $500 an hour, because the district court had an undue emphasis on the effective hourly rate. Suppose it turned out, in the particular case, that the hourly rate involved in the contingency fee was $2,500 an hour. Would that be enough to justify the magistrate judge in saying, well, that's considering everything, even the contingent nature of it. That's just too high. That's two or three times the fee that the top partners make in the large law firm. That fee is not a reasonable fee. Would that be justified? Or would you say, well, no, he can't do that, because you can't let the hourly rate be dispositive in these cases. But it is a factor, and I think $2,500 an hour, I think that's just too high. Why? Why is it too high? Isn't it, if you say it's too high, isn't it because when you compare it with other fees, you say it's too much for what was done? You know, it's the same story as if we don't, fortunately, have to set reasonable surgeons' fees. But a surgeon can charge an enormous amount for spending a few hours. See, again, I'm troubled by, let me say I start with a proposition that our court has said many times. I don't know, the Federal Circuit that is, I don't know if this court has ever said it, which is that we review judgments, not opinions. And the judgment here is that X dollars is a reasonable fee. And it seems to me we have to say either that was a justified conclusion or a non-justified conclusion. And you tell us we should say it's a non-justified conclusion. But it's not clear to me why you say that. Is it that you read Gressberg as saying, in every case there's only one way the district court can approach the exercise of discretion, that is to start with the 25 percent and go down. But it can't start with some other amount and go up. Is that basically what you're saying? That's correct. Because that was the decision of the Ninth Circuit in Gressberg before. And the law of this circuit on fees has always been that the district court must explain itself to enable the court to make an informed decision on review. And so I think that we have to look at the opinion of Judge Nakazato in both cases and the opinion of Judge Block in the Haley matter. When we talk about the effective hourly rate, Your Honor started with a story, and I'd like to explain with a different story why I'm right. No one could untie the Gordian knot at Thebes. No one. Because it had no ends. And everyone who tugged at it made the knot tighter and tighter. But Alexander the Great is told to have come to the Gordian knot and cut it in half. And that solved the knot. And he became the king of all the known world. I have always demanded of Mr. Shapiro, Mr. Cho, Ms. Haley, that they attack these cases with one object in mind, to assist the court in its management of its docket to the benefit of our client. And Judge Nakazato, in particular, to a lesser extent Judge Block, have told us that your efficiency, your ability to prevail in these cases, you will end up having to handle double the number of cases to end up in the same economic position as the lawyer that spends 50, 53, 55 hours on these cases. Judge Nakazato said that we're in the top 10 percent. I've argued that. I accept his opinion on that subject. Would a lawyer that's in an AV-rated firm that is challenged to be effective and productive and to assist the court in the management of its docket think that this is a reasonable fee? Or could a district court reasonably say that this is an adequate fee to compensate for the type of services involved with the inherent delays involved in getting paid, the risks in getting paid? And I think the answer to that question is no. It just isn't a reasonable fee under the circumstances presented. We take an incredible risk and we take an incredible delay in getting paid. Lawyers that come to work, do this kind of work on a contingency fee basis, they file in the district court in 2003 and get a judgment on their fee petition in 2006. Mr. Cho in Washington waited three years between the time we filed the complaint and he performed professional services to the time he could get paid. And a 40 percent multiplier under those circumstances where he only had a 38 percent chance of prevailing at all and he had to wait three years, that's not reasonable. Because we're required to start with the contingency fee. Another attorney in my office suggested yesterday that we ask the question in a slightly different manner. In 2003, if Ruby Washington was sitting in my office with you as her personal lawyer but not knowing anything about social security, would you have recommended that she sign a 25 percent contingency fee agreement with my firm or would you have suggested that she go someplace else? I submit on the record. Thank you. Thank you.
judges: Fletcher, Smith, Friedman